UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

O'SHEA TERRELL JACKSON,

      Petitioner,

v.                                    Case No. 3:21-cv-90-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner O'Shea Terrell Jackson, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Jackson also filed a Memorandum of Law in Support of the Petition (Memorandum; Doc. 2). In the Petition, Jackson challenges a 2014 state court (St. Johns County, Florida) judgment of conviction for second-degree murder with a firearm. He raises four grounds for relief. See Petition at 5-16. Respondents submitted a Response to the Petition

---

[1] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

(Response; Doc. 8) with exhibits (Doc. 9-1). Jackson filed a brief in reply (Reply; Doc. 10). This action is ripe for review.

## II. Relevant Procedural History

On July 14, 2011, a grand jury indicted Jackson on one count of first-degree murder with a firearm. Doc. 9-1 at 7. Jackson proceeded to trial, and on June 24, 2014, a jury found him guilty of the lesser included offense of second-degree murder with a firearm. Id. at 751. On July 31, 2014, the trial court sentenced Jackson to a term of imprisonment of forty years, with a minimum mandatory term of twenty-five years. Id. at 1005-12.

Jackson appealed his conviction and sentence to the Fifth District Court of Appeal (Fifth DCA). His appellate counsel filed an Anders[2] brief, id. at 1794-1814, and Jackson filed a pro se initial brief.[3] The Fifth DCA ordered Jackson's appellate counsel to file a supplemental brief addressing Jackson's pro se argument that the jury instructions on self-defense and duty to retreat were conflicting and constituted fundamental error. Id. at 1844, 1846-56. On December 4, 2015, the Fifth DCA affirmed Jackson's conviction and sentence in a written opinion, id. at 1902-07, and on December 28, 2015, it issued the mandate, id. at 1909.

---

[2] Anders v. California, 386 U.S. 738 (1967).

[3] See onlinedocketsdca.flcourts.org, O'Shea Terrell Jackson v. State of Florida, 5D14-2877 (Fla. 5th DCA).

On December 29, 2015, Jackson filed a notice seeking to invoke the discretionary jurisdiction of the Florida Supreme Court. Id. at 1911-12. The Florida Supreme Court denied his request on June 24, 2016. Id. at 1929. On October 24, 2016, Jackson filed a pro se motion to amend in the Florida Supreme Court. Id. at 1931-37. He argued that the trial court committed reversible error by omitting the manslaughter instruction from the jury instruction package that was sent to the deliberation room. Id. The Florida Supreme Court treated the motion to amend as a petition for writ of habeas corpus and transferred it to the postconviction court for consideration as a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Id. at 1947.

Upon transfer, the postconviction court determined the motion was facially insufficient but granted Jackson leave to file a motion that complied with the requirements of Rule 3.850. Id. at 1956-58. On January 4, 2017, Jackson filed a Rule 3.850 Motion. Id. at 1960-81. Jackson subsequently amended his Rule 3.850 Motion on October 20, 2017. Id. at 2002-30. In his amended Rule 3.850 Motion, Jackson argued his trial counsel rendered ineffective assistance when he: failed to file a pretrial motion for statutory immunity under Florida Statutes section 776.032 (ground one); failed to call Curtis Grant and Jarvis Baker as defense witnesses (ground two); failed to

request a <u>Richardson</u>[4] hearing upon learning of a discovery violation (ground three); requested a jury instruction on culpable negligence when the evidence did not support such a theory (ground four); failed to object to the prosecutor's assertion, during closing argument, that Jackson had a duty to retreat (ground five); failed to object to the trial court giving the jury an incomplete jury instruction package (ground six); and failed to object to the jury instruction on the forcible felony exception to self-defense (ground seven). <u>Id.</u> at 2002-27. In addition, Jackson argued that the cumulative effect of his trial counsel's errors violated his Sixth Amendment rights (ground eight). <u>Id.</u> at 2028.

On November 13, 2018, the postconviction court ordered an evidentiary hearing on grounds one and two of the amended Rule 3.850 Motion, deferred ruling on ground eight until after the evidentiary hearing, and denied all remaining grounds. <u>Id.</u> at 2092-2107. The postconviction court also appointed counsel to represent Jackson during the evidentiary hearing. <u>Id.</u> at 2106-07. After an evidentiary hearing, <u>id.</u> at 2291-2418, the postconviction court denied grounds one and two of the amended Rule 3.850 Motion on April 4, 2019, <u>id.</u> at 2446-52. On February 11, 2020, the Fifth DCA per curiam affirmed the denial of postconviction relief, <u>id.</u> at 2752, and issued the mandate on April 6, 2020, <u>id.</u> at 2765.

---

[4] <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971).

While his amended Rule 3.850 Motion was pending, Jackson filed a pro se petition for writ of habeas corpus in the Fifth DCA alleging ineffective assistance of appellate counsel. Id. at 2767-83. On April 30, 2018, the Fifth DCA denied the petition. Id. at 2804. Jackson filed a second petition for writ of habeas corpus on July 2, 2018, in which he alleged manifest injustice. Id. at 2831-38. The Fifth DCA denied the petition on September 11, 2018. Id. at 2841. Jackson filed the instant action on January 25, 2021. See Petition.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474.

The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Jackson's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

7

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court,

either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided

10

by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747-748, 111 S. Ct. 2546; Sykes,[6] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that

> counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

14

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

As Ground One, Jackson argues his trial counsel was ineffective when he failed to object to the trial court instructing the jury on the forcible felony exception to the justifiable use of deadly force. See Petition at 5-7. Jackson asserts he was prejudiced by his counsel's failure to object because the erroneous instruction negated his sole defense. See Memorandum at 7-10.

Jackson raised a substantially similar claim as ground seven of his amended Rule 3.850 Motion. See Doc. 9-1 at 2026-27. The postconviction court denied the claim, stating in relevant part:

> In his seventh ground for post-conviction relief, the Defendant alleges his attorney was ineffective for failing to object to the trial court instructing the jury on the forcible felony exception to the justifiable use of deadly force (self-defense). The forcible felony exception to the justifiable use of deadly force instruction was given by the trial court. The Defendant is correct that Florida courts have held the forcible felony instruction at issue should only be given when a defendant is alleged to have been committing or attempting to commit a separate, independent forcible felony at the time he or she allegedly acted in self-defense. See e.g. Martinez v. State, 981 So.2d 449, 452 (Fla. 2008); Morgan v. State, 127 So.3d 708, 714 (Fla. 5th DCA 2013); Crimins v. State, 113 So.3d 945, 948 (Fla. 5th DCA 2013); Sloss v. State, 45 So. 3d 66, 68 (Fla. 5th DCA 2010); Barnes v. State, 12 So.3d 797, 798 (Fla. 5th DCA 2009); Cancel v. State, 985 So.2d 1127 (Fla. 5th DCA 2008); Sipple v. State, 972 So.2d 912, 914 (Fla. 5th DCA 2008); Hawk v. State, 902

16

So.2d 331, 333 (Fla. 5th DCA 2005); <u>Cleveland v. State</u>, 887 So.2d 362, 363 (Fla. 5th DCA 2004).

The Indictment filed in this case only charged the Defendant with First Degree Murder. Similarly, the evidence offered at trial did not appear to indicate an uncharged independent forcible felony that the Defendant committed at the time he shot and killed the victim. It appears, therefore, that it was error to instruct the jury on the forcible felony exception. While the State concedes it was error for the Court to have given this instruction, it responds by asserting the Defendant was not substantially prejudiced by this error.

In a number of cases addressing the forcible felony instruction, Florida courts have found that while the instruction should not have been given, the error in doing so was not fundamental error. <u>See</u> <u>Martinez</u>, <u>supra</u>.; <u>Barnes</u>, <u>supra</u>.; <u>Cancel</u>, <u>supra</u>. Other cases have held that where no fundamental error is found, a defendant is likewise unable to demonstrate that his counsel's failure to post an objection resulted in prejudice sufficient to undermine the outcome of a trial under <u>Strickland</u>. <u>Lowe v. State</u>, 2 So.3d 21, 38 (Fla. 2009); <u>Chandler v. State</u>, 848 So.2d 1031, 1046 (Fla. 2003); <u>Davis v. State</u>, 12 So.3d 918 (Fla. 5th DCA 2009).

The courts that have found that no fundamental error occurred in instructing the jury on the forcible felony exception to self-defense have based their conclusions on one or more of the following factors: (1) whether a defendant argued other defenses at trial, (2) whether his or her self-defense claim was weak, and (3) whether the State argued the forcible felony instruction to the jury in countering the defendant's self-defense claim. <u>See</u> <u>Martinez</u>, 981 So.2d at 456; <u>Barnes</u>, 12 So.3d at 798; <u>Cancel</u>, 985 So.2d at 1130. Each of these considerations are present in the instant case and weigh against a finding of prejudice.

At trial, the Defendant testified on his own behalf. During his trial testimony, the Defendant claimed that on June 23, 2011, he drove to the victim,

17

Eric Felder's, house to talk to him about an incident earlier that day in which he had heard Mr. Felder had assaulted his mother. The Defendant admitted to taking a loaded handgun with him due to the victim's alleged reputation for violence and, upon arriving at Mr. Felder's residence, placing the gun in his waistband as he exited his vehicle. The Defendant said he walked about halfway toward the victim before he stopped and asked the victim, who was sitting at a picnic table some distance away, about the incident. The Defendant then claimed that, following an exchange of words, Mr. Felder ran, grabbed a metal folding chair, and then struck him in the head with the chair. The Defendant then testified that after being struck the first time, he pulled the gun from his waistband for the sole purpose of warning Mr. Felder that he "didn't come 'round here for this.[']" He stated that the victim then swung the chair at him a second time, at which point the Defendant raised his hand, which was still holding the gun, in order to fend off the blow. The chair then struck the Defendant's hand with enough force to cause the gun to accidentally discharge. The discharged bullet then struck the victim, resulting in his death.

While self-defense appears to have been the default argument at trial, the Defendant's own testimony and motion clearly shows that the actual nature of his defense was either that the shooting was accidental or self-inflicted by the victim as a result of the victim's alleged assault on the Defendant. The only defensive force the Defendant claimed he used against the victim was his act of arming himself with the firearm when he arrived at the victim's residence and then pulling it out of his waistband after he was struck in the head with the metal chair by the victim. The Defendant essentially denied that he intentionally pulled the trigger after deciding that he had no choice but to use deadly force to defend himself.

In Martinez, supra., the defendant was charged with attempted first degree premeditated murder and aggravated battery for the single act of stabbing his

girlfriend. The defendant raised a claim of self-defense, along with other defenses. At the conclusion of the trial, the jury was improperly charged on the forcible felony instruction without objection by defense counsel. Upon reviewing the complete record in the case, the Florida Supreme Court held that the erroneous instruction did not deprive the defendant of a fair trial and, therefore, fundamental error did not occur. 981 So.2d at 454. The Court explained it reached that conclusion for two reasons. First, self-defense was not the only strategy pursued by Martinez. The Court observed the defendant also argued the defenses of accident, intoxication, lack of premeditation, and that the victim's wounds were self-inflicted. Therefore, the Court held that, although the forcible felony instruction was erroneous, it did not deprive the defendant of his sole, or even his primary, defense strategy. Id. at 456. Second, the Court concluded the defendant's claim of self-defense was extremely weak. It noted that his description of the incident did not match the physical evidence and that his own testimony was inconsistent and contradictory. Given these circumstances, the Court held even if the forcible felony instruction had not been read to the jury, the possibility that the jury would have found Martinez not guilty by reason of self-defense minimal at best. Id.

In Barnes, supra., the defendant was charged with attempted first degree murder. The victim in the case was shot eight times, including once in the back as he was fleeing the shooting. At trial, the defendant claimed self-defense. The trial court charged the jury accordingly, including the instruction on the forcible felony exception. Defense counsel did not object to the forcible felony instruction, and the jury subsequently convicted the defendant of attempted second degree murder. On appeal, the Court observed that the physical evidence was inconsistent with self-defense and that the State never argued to the jury that Barnes' commission of a forcible felony negated his claim of self-defense. Because of this, it held that

improperly giving the forcible felony instruction was not fundamental error and, thus, did not require reversal. 12 So.3d at 798.

Lastly, in Cancel, supra., the defendant was charged with a single count of second degree murder with a weapon after he struck the victim in the head with a bat or stick. Unlike in Martinez, the only defense raised at trial was self-defense. The trial court, at the urging of the prosecutor, instructed the jury on the forcible felony exception to self-defense. Unlike in Barnes, the prosecutor proceeded to argue the forcible felony instruction to the jury during his closing argument. 985 So.2d at 1130. Nevertheless, the Fifth District Court of Appeal concluded the defendant's claim of self-defense was extremely weak. It observed that his own testimony was inconsistent with self-defense and with a video recording of the incident. For these reasons, it held that the trial court did not commit fundamental error by instructing the jury on the forcible felony exception. Id. at 1130-31.

As in Martinez, the defense in this case was not wholly rooted in a claim of self-defense. The Defendant's testimony here relied more on a claim that the shooting of the victim was the result of an accident or his own actions. Because the erroneous forcible felony instruction did not negate the primary defense that the victim's death was the result of an accident or by his own actions, it cannot be said that it undermined the outcome of the trial.

Additionally, the Defendant's claim of self-defense, like those asserted in Martinez, Barnes, and Cancel was weak. First, the Defendant told several different stories concerning how the victim was shot. At trial, as stated before, he testified that he approached the victim while armed with a firearm in his waistband to get the victim's side of the story concerning an alleged assault of the Defendant's mother earlier in the day. The Defendant said that he stopped about halfway between his vehicle and a picnic table where the victim was sitting and, following an exchange of words, the victim ran back to

20

a tree, picked up a metal folding chair, and then attacked the Defendant by striking him in the head with the chair. The Defendant testified that he then pulled the gun from his waistband simply to warn the victim not to hit him again. However, the victim swung the chair at his head again. The Defendant then claimed that he put up right hand in which he was still holding the gun in order to shield himself from the blow. The chair then struck him in the hand and, as a result, the gun accidentally discharged and struck the victim in the head. The Defendant stated upon being shot, the victim immediately fell back on the ground and didn't move again.

The Defendant's trial testimony, however, was vastly different than two statements he made to law enforcement in the days immediately following the shooting. In those statements, he denied going to the victim's residence with a firearm or even having a firearm. He claimed that upon confronting the victim, the victim pulled a firearm and struck him on the head. A scuffle then ensued, which eventually led to the two of them rolling around on the ground, wrestling over the gun. It was during that struggle that the gun unintentionally went off, striking the victim in the head. Testimony concerning these contradictory statements was given by the police investigator who had interviewed the Defendant, and the Defendant admitted to making the statements on cross-examination.

In addition to the Defendant's trial testimony being inconsistent with his police interviews, it was also inconsistent with the physical evidence. The Defendant testified that the blow with the chair opened a deep gash on the left side of his head that was still bleeding when he turned himself in to law enforcement. However, the police officer who took the Defendant into custody later that night, testified that he examined the Defendant and did not observe any injuries whatsoever. Lastly, the Defendant's previous attorney testified at trial that during a meeting with the Defendant the morning after the shooting he saw

only a bump on the Defendant's head and saw no evidence of any bleeding.

The third factor courts have considered in determining whether improperly instructing a jury on the forcible felony exception was fundamental error is whether the State actually argued the instruction at trial. <u>Barnes</u>, <u>supra</u>. In this case, as in <u>Barnes</u>, the State never addressed the forcible felony instruction at any point during its closing argument.

Finally, it should be noted the Fifth District Court of Appeal addressed the issue of the self-defense jury instructions given in this case. <u>Jackson</u>, <u>supra</u>. Although it did not address specifically the forcible felony jury instruction, it found no error on the self-defense instructions given. <u>Id.</u> at 1106.

Accordingly, the record conclusively demonstrates that the Defendant did not suffer any prejudice as the result of any error in instructing the jury on the forcible felony exception to self-defense. Therefore, his claim in ground seven should be denied.

Doc. 9-1 at 2098-2106 (record citations omitted). The Fifth DCA affirmed the denial of relief without a written opinion. <u>Id.</u> at 2752.

To the extent that the Fifth DCA decided this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

---

[8] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Assuming arguendo that Jackson's trial counsel erred in failing to object to the erroneous forcible felony instruction, the record fully supports the postconviction court's conclusion that Jackson failed to demonstrate prejudice. Contrary to Jackson's assertion in his Petition and Memorandum, self-defense was not the sole, or even primary, defense strategy pursued by Jackson at trial. Rather, as the postconviction court noted, Jackson testified at trial that the shooting was the result of an accidental discharge or self-inflicted by the victim as a result of the victim's alleged assault on Jackson. See Doc. 9-1 at 320-21 (testifying that the victim "attempt[ed] a second time to swing [the folding chair at Jackson], and that's when [Jackson] put [his] hand up to . . . block the hit. And the chair hit [Jackson's] arm, and that's when the accidental discharge went off"). Not only that, Jackson's defense theories, including his self-defense claim, were weakened by his admission that his trial testimony was inconsistent with, and largely contradictory to his prior statements to law enforcement personnel. Id. at 323-25, 342-43 (admitting that he lied to detectives during interviews that took place shortly after the shooting).

In addition, multiple eyewitnesses' trial testimony failed to support Jackson's account of the shooting or his defense theories. See, e.g., Doc. 9-1 at 192-93, 195 (Raymond Evans' testimony that Jackson said "I'm going to kill a lot of you motherfuckers around here" immediately before the shooting, and further, that the victim was never able to raise a chair up to strike Jackson); id. at 219, 223 (Daryll Varnes' testimony that the victim was bending down to pick up a chair when he was shot); id. at 127 (Kenneth Hardy's testimony that the victim did not have a chance to swing the chair at Jackson before being shot).

Moreover, the jury instructions on Jackson's defenses were not limited to Jackson's claim of self-defense; the trial court also instructed the jury on Jackson's accidental shooting theory. See Doc. 9-1 at 958 (instructing jury that, in certain circumstances, the "killing of a human being is excusable, and therefore lawful" if it is "committed by accident"). Finally, there is no indication that the State ever argued to the jury that Jackson's commission of a forcible felony negated his claim of self-defense.

On this record, Jackson has not demonstrated that he was prejudiced by his trial counsel's failure to object to the trial court instructing the jury on the forcible felony exception to self-defense. See, e.g., Pinkney v. Sec'y, Dep't of Corr., 876 F.3d 1290, 1295 (11th Cir. 2017) (rejecting ineffective assistance of appellate counsel claim regarding an erroneous forcible felony instruction in

part because self-defense was not the only defense raised and the trial evidence contradicted the defendant's trial testimony and his assertion of self-defense); Santiago v. Sec'y, Dep't of Corr., 723 F. App'x 896, 903-04 (11th Cir. 2018) (trial counsel's failure to object to forcible felony exception to self-defense jury instruction did not prejudice defendant, and, thus, did not amount to ineffective assistance of counsel, where the trial evidence contradicted defendant's trial testimony and "no one ever mentioned, let alone argued, the forcible felony exception to the jury").[9] Accordingly, relief on the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Jackson argues his trial counsel was ineffective when he failed to file a pretrial motion to dismiss based on statutory immunity under Florida's "Stand Your Ground" law. See Petition at 7-11; Memorandum at 11-15. Jackson raised a substantially similar claim as ground one of his amended Rule 3.850 Motion. See Doc. 9-1 at 2005-08. After holding an evidentiary hearing on the claim, the postconviction court denied relief, stating in relevant part:

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

In ground one of the Defendant's motion he asserts his counsel was ineffective for failing to file a pretrial motion for dismissal based on immunity under Florida's Stand Your Ground Law, pursuant to Fla. Stat. § 776.032. At the evidentiary hearing, the State called the Defendant's trial counsel James Hernandez, Esq. as a witness. Mr. Hernandez is an experienced criminal defense attorney with over 30 years experience. Mr. Hernandez testified he made a strategic decision to not file a stand your ground motion to dismiss. Mr. Hernandez testified that in order to have pursued such a motion he would had to have called the Defendant to testify.[10] Mr. Hernandez testified that he did not want to call the Defendant to testify at such a hearing because the case was being prosecuted by very experienced prosecutors and he did not want to give them a shot at cross-examining the Defendant, particularly considering the fact that the Defendant had given two inconsistent statements regarding the incident prior to trial. The Defendant even acknowledged in his motion that his attorney didn't file the stand your ground motion because he thought doing so would disadvantage them by revealing their theory of defense.

Based on the testimony presented to the Court at the evidentiary hearing, this Court concludes that Mr. Hernandez exercised sound defense strategy by not filing a stand your ground motion. Considering the nature of the case, and the fact the Defendant had already made two prior statements that were inconsistent, it was very reasonable to not file a stand your ground motion, in which the Defendant would be forced to testify and be subject to cross-examination by experienced prosecutors. Mr. Hernandez clearly acted

---

[10] The postconviction court noted: "At the time this case was pending, Fla. Stat. §776.032 provided that it was the Defendant's burden to establish entitlement to immunity; therefore, the Court concurs with Mr. Hernandez's assessment that he would have had to call the Defendant to testify at such a hearing. Fla. Stat. §776.032 has since been amended shifting the burden to the prosecution to establish the Defendant is not entitled to immunity. Ch. 2017-72, Laws of Fla." See Doc. 9-1 at 2448.

within the wide range of reasonably competent performance under prevailing professional standards. Additionally, the Defendant failed to establish the prejudice prong in <u>Strickland</u>. Defendant failed to establish that even had his trial counsel filed a stand your ground motion that there was a reasonable probability that it would have been granted. This is particularly the case considering the differing version of events Defendant had given. Defendant initially claimed the victim had pulled a gun during the altercation. The Defendant initially reported that during the struggle the gun fell, he and the victim fought for control over it, and then the gun discharged striking the victim. The Defendant later changed his story, indicating he brought the gun and pulled it on the victim during the altercation and the gun went off striking the victim. In light of the Defendant's multiple version of events, there is not a reasonable probability that had defense counsel filed a stand your ground motion, it would have been granted.

Therefore, the Defendant has failed to establish his claim in ground one and it will be denied.

<u>Id.</u> at 2448-50. The Fifth DCA affirmed the denial of relief without a written opinion. <u>Id.</u> at 2752.

To the extent that the Fifth DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Jackson's trial counsel testified at the evidentiary hearing that he made the decision not to file a pretrial stand your ground motion to dismiss because Jackson would have had to testify at a hearing on the motion. Because Jackson had given differing accounts to law enforcement personnel regarding the shooting, counsel indicated that he did not want Jackson to be subject to cross-examination by experienced prosecutors. See Doc. 9-1 at 2390-93. Further, the Court notes that if the motion to dismiss failed, Jackson's hearing testimony could have been used against him at trial. See Cruz v. State, 189 So. 3d 822, 827-29 (Fla. 4th DCA 2015) (holding that the trial court did not err in allowing admission of a defendant's statements at a Stand Your Ground hearing as substantive evidence at trial because the defendant "was not required to surrender any constitutional right by voluntarily testifying in the pre-trial Stand Your Ground immunity hearing."). Under these circumstances, Jackson has not shown that his counsel's strategic decision not to file a stand your ground motion was so "patently unreasonable" as to amount to ineffective assistance. See Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Insofar as Jackson argues that a pretrial stand your ground motion to dismiss "would have been successful," <u>see</u> Memorandum at 15, the Court is not persuaded. The statute Jackson relies on in support of this claim, Florida Statutes section 776.012(2), states in pertinent part that "[a] person is justified in using or threatening to use deadly force if he or she <u>reasonably believes</u> that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself." (emphasis added). Although Jackson gave several differing accounts regarding how the shooting occurred, his primary defense theory was that the gun accidentally discharged and struck the victim. Assuming Jackson's testimony at a hearing on a pretrial stand your ground motion to dismiss would be consistent with this theory, Jackson could not have established that he discharged the weapon because he "reasonably believed" that using deadly force was necessary to prevent imminent death or great bodily harm to himself. Discharging a firearm accidently does not entail formulating a belief, reasonable or otherwise, that deadly force is necessary. Accordingly, Jackson fails to establish that his counsel was ineffective for failing to file a pretrial stand your ground motion to dismiss. See <u>Pinkney</u>, 876 F.3d at 1297 ("[A]n attorney will not be held to have

performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Thus, relief on the claim in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Jackson argues his trial counsel was ineffective for failing to call Curtis Grant and Jarvis Baker as defense witnesses during trial. See Petition at 11-14. Jackson raised a substantially similar claim as ground two of his amended Rule 3.850 Motion. See Doc. 9-1 at 2009-12. After an evidentiary hearing on this claim, the postconviction court denied relief, stating in pertinent part:

> In ground two, Defendant asserts his counsel was ineffective for failing to call Curtis Grant and Jarvis Baker as witnesses at trial to support his claim of self-defense and his claim that his gun accidentally discharged during the altercation. At the evidentiary hearing, Defendant called Curtis Grant as a witness. Mr. Grant is the Defendant's cousin and testified he was in the car with Defendant when he drove to the scene of the murder to confront the victim regarding an altercation the victim had earlier with the Defendant's mother. Mr. Grant testified that the victim swung a chair at the Defendant and shortly thereafter he heard a gunshot. Mr. Grant testified at the evidentiary hearing that he didn't know if the Defendant had a gun but guessed he had one; however, Mr. Grant acknowledged that he gave deposition testimony before trial wherein he conclusively testified that the Defendant did not have a gun. Mr. Hernandez testified that the problem with calling Mr. Grant to testify as a defense witness at trial was that Mr. Grant's deposition testimony—that the Defendant

never had a gun—was inconsistent with the Defendant's version of events at trial that he had a gun and was defending himself with the gun when it went off by accident during a scuffle. Mr. Hernandez testified he spoke with Mr. Grant prior to trial and the testimony he would have given was inconsistent with the Defendant's version of events and theory of defense. Therefore, Mr. Hernandez made the reasonable strategic decision to not call a witness to testify that would provide evidence contrary to the defense theory.

The defense also called Jarvis Baker to testify at the evidentiary hearing. Mr. Baker is also the Defendant's cousin. Mr. Baker testified he was present during the murder. He testified that he observed the Defendant go up to the victim, the victim hit the Defendant with a chair, the Defendant was falling back and the gun he had in his hand discharged by accident. Mr. Baker testified that he never told the police what he observed because he had a warrant outstanding for his arrest at the time. Mr. Hernandez testified that he spoke with Mr. Baker on the phone prior to trial, and during that phone conversation Mr. Baker told him that immediately after the victim hit the Defendant with the chair and before the Defendant shot the victim, the Defendant said "I'll kill all of you." Mr. Baker confirmed on cross-examination at the evidentiary hearing, that he heard the Defendant make that statement.

Mr. Hernandez testified that he felt he could not call Mr. Baker to testify because of that statement, which would have defeated the self-defense and accidental discharge theory of defense, and would have played into the State's theory that the murder was premeditated and led to a First Degree Murder conviction. Therefore, Mr. Hernandez made the very reasonable strategic decision to not call Mr. Baker as a witness at trial. Thus, the Court concludes that Mr. Hernandez was not ineffective in that he acted within the wide range of reasonably competent performance under prevailing professional standards.

31

See Doc. 9-1 at 2450-52. The Fifth DCA affirmed the denial of relief without a written opinion. Id. at 2752.

To the extent that the Fifth DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record reflects that counsel made a strategic decision not to call Grant and Baker because he did not believe their testimony would assist the defense. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). Counsel's strategic decisions "are entitled to a 'strong

presumption' of reasonableness." <u>Dunn v. Reeves</u>, 141 S.Ct. 2405, 2410 (2021) (quoting <u>Richter</u>, 562 U.S. at 104).

As to counsel's decision not to call Grant as a defense witness, counsel testified during the evidentiary hearing that he made the strategic decision not to call Grant because he had given inconsistent accounts of the shooting, including in particular whether Jackson had a gun. <u>Id.</u> at 2396-97. Grant admitted during the evidentiary hearing that his prior statements to law enforcement officers and his deposition testimony "were not an accurate representation of what happened." <u>Id.</u> at 2322. Because Grant's proposed testimony was subject to impeachment and would have conflicted with Jackson's own account of the shooting as well as Jackson's admission that he had a gun, it was a reasonable trial strategy for counsel not to call Grant as a witness. Jackson has failed to establish that no competent attorney would have taken the action that his counsel chose. <u>See</u> <u>Goff v. United States</u>, 693 F. App'x 854, 855 (11th Cir. 2017) ("The choice not to call either of them as witnesses was not patently unreasonable that no competent lawyer would have chosen it, and was the epitome of a strategic decision.").

As it relates to counsel's decision not to call Baker, counsel testified during the Rule 3.850 evidentiary hearing that he had a telephone conversation with Baker shortly after Jackson identified Baker as a potential defense witness. <u>See</u> Doc. 9-1 at 2393-95. According to counsel, Baker stated

during the phone call that he was at the scene and saw Jackson pull a gun and say "I'll kill all of you" immediately before the shooting occurred. Id. Counsel testified that he made the strategic decision not to call Baker as a witness for a number of reasons. First, the "I'll kill all of you" statement was inconsistent with the defense theory that the gun went off by accident. Id. at 2395. Second, because the statement echoed what a State witness alleged Jackson said, counsel was concerned Baker's testimony would bolster the State's case that the shooting was premeditated first degree murder. Id. at 2395-96. Third, counsel noted that Baker told him during the phone call that he witnessed the shooting, but a diagram Jackson drew of the scene to assist counsel with his pretrial investigation did not list Baker as being present. See id. at 2397-98. Under these circumstances, counsel made a reasonable strategic decision not call Baker. The Court concludes that counsel cannot be deemed ineffective for failing to call a witness that would not have been helpful to, and indeed may have undermined, Jackson's defense. Thus, relief on the claim in Ground Three is due to be denied.

## D. Ground Four

As Ground Four, Jackson argues his trial counsel was ineffective when he failed to request a Richardson[11] hearing upon learning of a discovery

---

[11] "A Richardson hearing is a proceeding under Florida law by which a criminal defendant can challenge a discovery violation." Taylor v. Sec'y, Fla. Dep't of Corr., 64

violation during the trial testimony of Raymond Evans, an eyewitness to the shooting. Petition at 15-17. Jackson raised a substantially similar claim as ground three of his amended Rule 3.850 Motion. See Doc. 9-1 at 2012-16. The postconviction court summarily denied the claim, stating in pertinent part:

> In ground three, Defendant asserts his counsel was ineffective for failing to request a Richardson[] hearing upon learning of an alleged discovery violation. At trial, defense counsel asked the State's witness, Raymond Evans, "[h]ow many folks in Hastings did you talk to about the incident between June 23 and June 29?" During his response, Mr. Evans mentioned that Defendant called him from jail. On redirect examination, the State inquired, "I think I heard you say that you had talked to the defendant since this happened?" Mr. Evans answered affirmatively and testified that Defendant called him from jail after his arrest in this case and told Mr. Evans "this ain't no beef stuff" and to "apologize to [Mr. Evans] about what happened."
>
> Defendant claims that this constituted a discovery violation because the statement had not been disclosed prior to trial and his counsel should have requested a Richardson hearing. In his motion, Defendant asserts that since the trial, Mr. Evans "advised that before trial he told the State Attorney about the aforestated[sic] substance of Defendant's phone call, because he believed their communication before the trial was prohibited."
>
> However, it is clear from the record that neither defense counsel nor the State was aware of the

---

F.4th 1264, 1272 (11th Cir. 2023). "Under Richardson, the reviewing court assesses whether a discovery violation resulted in harm or prejudice to the defendant; in doing so, the court considers circumstances such as whether the violation was 'inadvertent or willful' and 'trivial or substantial' as well as what effect, if any, the violation had on 'the ability of the defendant to properly prepare for trial.'" Id. (quoting Richardson, 246 So. 2d at 775).

conversation prior to Mr. Evan's testimony. The State articulated on the record the fact that Mr. Evans spoke to Defendant in jail "just came up for the first time" during Mr. Evans's testimony at trial and that it "never heard about it, either." Defense counsel asked the State when it learned that Mr. Evans spoke to Defendant in jail and the State responded it learned about it during defense counsel's cross-examination. Accordingly, the record conclusively refutes Defendant's claim that counsel should have moved for a <u>Richardson</u> hearing as there was no reason for counsel to believe a discovery violation occurred. Additionally, counsel moved for a mistrial based on Mr. Evan's statement and the motion was denied by the trial court. <u>Id.</u> The record reflects that counsel was not deficient and ground three will be summarily denied.

Doc. 9-1 at 2095-96 (record citations omitted). The Fifth DCA affirmed the denial of relief without a written opinion. <u>Id.</u> at 2752.

To the extent that the Fifth DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of this claim.

36

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record supports the postconviction court's conclusion that a <u>Richardson</u> hearing was not warranted. During the sidebar conference, the State confirmed that it was unaware of the jailhouse call until Evans testified about it at trial. <u>See</u> Doc. 9-1 at 210 (prosecutors informing the trial court that they had "never heard about" the call and that it "just came up for the first time" during defense counsel's cross examination of Evans). As such, there was no discovery violation because the State could not be required to disclose something that it had no knowledge of. Although Jackson alleges that the State knew about the jailhouse call before the trial began, he fails to point to anything in the record that supports his allegation. <u>See</u> Memorandum at 23-24. Thus, the Court concludes that defense counsel was not deficient for failing to request a <u>Richardson</u> hearing. <u>See</u> <u>Evans v. State</u>, 995 So. 2d 933, 946-47 (Fla. 2008) (holding counsel was not deficient for failing to request a <u>Richardson</u> hearing following witness's testimony that defendant was a gang member where colloquy after the testimony "confirm[ed] that the State was unaware of this information and did not willfully withhold it from the defense or otherwise violate a discovery rule"); <u>see also</u> <u>Pinkney</u>, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). In addition, Jackson has

not shown any resulting prejudice. Accordingly, Jackson is not entitled to relief on the claim in Ground Four.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Jackson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jackson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Jackson appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of March, 2024.


MARCIA MORALES HOWARD
United States District Judge


Jax-10 2/22
C:    Counsel of record